**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| SIOUX CHIEF MFG. CO., INC., | ) | |
| *a Missouri Corporation*; | ) | |
| | ) | |
| JOSEPH P. ISMERT; | ) | |
| | ) | |
| DOMINIC ISMERT; *and* | ) | |
| | ) | |
| JOSEPH N. ISMERT; | ) | |
| | ) | |
| *Plaintiffs*; | ) | |
| | ) | |
| *vs.* | ) | Case No. |
| | ) | Division: |
| | ) | |
| KATHLEEN SEBELIUS, | ) | |
| *in her official capacity as Secretary of the* | ) | |
| *United States Department of Health and* | ) | |
| *Human Services*; | ) | |
| | ) | |
| HILDA SOLIS, | ) | |
| *in her official capacity as Secretary of the* | ) | |
| *United States Department of Labor*; | ) | |
| | ) | |
| TIMOTHY GEITHNER, | ) | |
| *in his official capacity as Secretary of the* | ) | |
| *United States Department of the Treasury*; | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES; | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| LABOR; *and* | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| THE TREASURY; | ) | |
| | ) | |
| *Defendants.* | ) | |

1

## VERIFIED COMPLAINT

Plaintiffs Joseph P. Ismert, Dominic Ismert, Joseph N. Ismert, (collectively "Ismerts") and Sioux Chief Mfg. Co., Inc., a Missouri corporation, (herein "Sioux Chief" or collectively, with the Ismerts, the "Plaintiffs") by and through their counsel, state as follows:

### NATURE OF THE CASE

1.      In this action, the Plaintiffs seek declaratory and injunctive relief for the Defendants' violations of the Religious Freedom Restoration Act 42 U.S.C. § 2000bb *et seq.* (RFRA), the First and Fifth Amendments to the United States Constitution, and the Administrative Procedure Act, 5 U.S.C. § 500, *et seq.*, ("APA") via 5 U.S.C. § 700, *et seq.*, (allowing for judicial review of APA violations), by Defendants' actions in implementing the Patient Protection and Affordable Care Act of 2010, Pub. L. 111-148 (March 23, 2010), and Pub. L. 111-152 (March 30, 2010) (hereinafter "PPACA"), in ways that coerce the Plaintiffs and thousands of other conscientious individuals to engage in acts they consider sinful and immoral in violation of their most deeply held religiofus beliefs.

2.      Plaintiffs Ismerts are practicing and believing Catholic Christians. They have associated in a corporate form to operate Sioux Chief Mfg. Co., Inc., a Missouri corporation. Plaintiff Sioux Chief's principal place of business is located in Peculiar, Missouri. The Ismerts seek to run Sioux Chief in a manner that reflects their sincerely held religious beliefs. The Ismerts, base these sincerely held religious beliefs on the moral teachings of the Catholic Church, and believe that God requires respect for the sanctity of human life and for the procreative and unitive character of the sexual act in marriage.

2

3.      Applying this religious faith and the moral teachings of the Catholic Church, the Ismerts have concluded that it would be sinful and immoral for them to intentionally participate in, pay for, facilitate, or otherwise support abortifacient drugs, contraception, or elective sterilization, through health insurance coverage they offer at Sioux Chief. As a consequence, the Ismerts provide health insurance benefits to their employees that omits coverage of abortifacient drugs, contraception, and elective sterilization. The Ismerts' plan is self-insured, and the plan year renews each year on April 1, the next renewal date thus occurring on April 1, 2013.

4.      Fully knowing that many religious citizens hold the same or similar beliefs, on February 15, 2012, the Defendants issued final rules through the Departments of HHS, Labor and Treasury, titled "Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the Patient Protection and Affordable Care Act," 77 Fed. Reg. 8725–30 (hereinafter the "Preventive Services Mandate" or the "Mandate")—that force Plaintiffs to pay for and otherwise facilitate the insurance coverage and use of abortifacient drugs, contraception, sterilization and related education and counseling.

5.      The Ismerts, like others associated in the corporate form, have concluded that compliance with Defendants' Mandate would require them to violate their deeply held religious beliefs as formed by the moral teachings of the Catholic Church. The Mandate illegally and unconstitutionally coerces Plaintiffs to violate their sincerely held Catholic beliefs under threat of heavy fines and penalties. The Mandate also forces Plaintiffs to fund government-dictated speech that is directly at odds with the religious ethics derived from their deeply held religious beliefs and the moral teachings of the Catholic Church that they strive to embody in their business. Defendants' coercion tramples on the freedom of conscience of Plaintiffs and millions of other Americans to abide by their religious convictions, to comply with moral imperatives they believe

3

are decreed by God Himself through His Church, and to contribute to society through business in a way that is consistent with their religious ethics, deeply held religious beliefs, and the moral teachings of the Catholic Church.

6.      Defendants' refusal to accommodate the conscience of the Plaintiffs is highly selective. PPACA exempts a variety of health plans from the Mandate, and upon information and belief the government has provided thousands of exemptions or waivers from the PPACA for various other entities, such as large corporations. But Defendants' Mandate does not exempt Plaintiffs' plan or those of many other religious Americans.

7.      Defendants' actions violate the Plaintiffs' right freely to exercise religion, protected by the Religious Freedom Restoration Act and the Religion Clauses of the First Amendment to the United States Constitution.

8.      Defendants' actions also violate the Plaintiffs' right to the freedom of speech, as secured by the Free Speech Clause of the First Amendment to the United States Constitution, and their due process rights secured by the Fifth Amendment to the United States Constitution.

9.      Additionally, Defendants violated the Administrative Procedure Act, 5 U.S.C. § 553, by imposing the Mandate without prior notice or public comment, and for other reasons.

10.      Plaintiffs are faced with imminent harm due to Defendants' Mandate. The Mandate by its terms forces Plaintiffs to obtain and pay for insurance coverage of the objectionable items in their April 1, 2013, plan. Plaintiffs must coordinate and arrange the details for that plan on and by March 1, 2013. Plaintiffs therefore will suffer irreparable harm by or before March 1, 2013, unless the Court enters declaratory and injunctive relief to protect Plaintiffs from Defendants' deliberate attack on their consciences and religious freedoms which would result from forced compliance with the Mandate.

4

## IDENTIFICATION OF PARTIES

11.  Sioux Chief Mfg. Co., Inc., a Missouri corporation (herein "Sioux Chief"), has its principal place of business at 24110 South Peculiar Drive, Peculiar, Missouri.

12.  Sioux Chief is a family business that manufactures plumbing products. It is operated by Plaintiffs Dominic Ismert, Joseph N. Ismert, and Joseph P. Ismert (together, the Ismerts).

13.  Plaintiff Joseph P. Ismert, a resident of Kansas City, Missouri, is President of the Company. He is also the trustee of a revocable trust that is a shareholder of the Company.

14.  Plaintiff Dominic P. Ismert, a resident of Belton, Missouri, is a shareholder of Plaintiff Sioux Chief, a Vice President, and the Treasurer of the Company.

15.  Plaintiff Joseph N. Ismert, a resident of Overland Park, Kansas, is a shareholder of Plaintiff Sioux Chief, a Vice-President, and the Secretary of the Company.

16.  Together, the Ismerts represent all the voting shares of the Company, and approximately 85% of the nonvoting shares.

17.  Each of the Ismerts is a member of Sioux Chief's Board of Directors.

18.  By virtue of their ownership, directorship and officer positions, the Ismerts are responsible for implementing Sioux Chief's compliance with Defendants' Mandate.

19.  Defendants are appointed officials of the United States government and United States Executive Branch agencies responsible for issuing and enforcing the Mandate.

20.  Defendant Kathleen Sebelius is the Secretary of the United States Department of Health and Human Services (HHS). In this capacity, she has responsibility for the operation and management of HHS. Sebelius is sued in her official capacity only.

5

21.     Defendant Department of Health and Human Services is an executive agency of the United States government and is responsible for the promulgation, administration and enforcement of the Mandate.

22.     Defendant Hilda Solis is the Secretary of the United States Department of Labor. In this capacity, she has responsibility for the operation and management of the Department of Labor. Solis is sued in her official capacity only.

23.     Defendant Department of Labor is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the Mandate.

24.     Defendant Timothy Geithner is the Secretary of the Department of the Treasury. In this capacity, he has responsibility for the operation and management of the Department. Geithner is sued in his official capacity only.

25.     Defendant Department of Treasury is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the Mandate.

## JURISDICTION AND VENUE

26.     This action arises under the Constitution and laws of the United States. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1361, jurisdiction to render declaratory and injunctive relief under 28 U.S.C. §§ 2201 & 2202, 42 U.S.C. § 2000bb-1, 5 U.S.C. § 702, and Fed. R. Civ. P. 65, and to award reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and RFRA, 42 U.S.C. § 1988.

6

27.     Venue lies in this district pursuant to 28 U.S.C. § 1391(e). A substantial part of the events or omissions giving rise to the claim occurred in this district, and one or more of the Plaintiffs are located in this district.

## FACTUAL ALLEGATIONS

## I. THE ISMERTS' RELIGIOUS BELIEFS AND OPERATION OF SIOUX CHIEF ACCORDING TO THE SAME

28.     The Ismerts are practicing and believing Catholic Christians.

29.     They strive to follow Catholic ethical beliefs and religious and moral teachings throughout their lives, including in their operation of Sioux Chief.

30.     The Ismerts sincerely believe that the Catholic faith does not allow them to violate Catholic religious and moral teachings in their decisions operating Sioux Chief.

31.     They Ismerts further believe that their operation of Sioux Chief must be guided by ethical social principles and Catholic religious and moral teachings, that individuals must operate their businesses according to the God-ordained ethics, religious and moral teachings of the Church, and, that their Catholic faith prohibits them to sever their religious beliefs from their daily business practice, and that their Catholic faith requires them to integrate the gifts of the spiritual life, the virtues, morals, and ethical social principles of Catholic teaching into their life and work.

32.     The Catholic Church teaches that abortifacient drugs, contraception and sterilization are intrinsic evils.

33.     As a matter of religious faith the Ismerts believe that those Catholic teachings are among the religious ethical teachings they must follow throughout their lives including in their business practice.

7

34.     Consequently, the Ismerts believe that it would be immoral and sinful for them to intentionally participate in, pay for, facilitate, or otherwise support abortifacient drugs, contraception, sterilization, and related education and counseling, as would be required by the Mandate, through their inclusion in the health benefits paid for by Sioux Chief.

35.     Article X of Sioux Chief's Articles of Incorporation gives the corporation the "power and obligation to accomplish the purposes of the Corporation following appropriate religious, ethical, or moral standards."

36.     Article III, Section 9 of the Bylaws states:

"Guiding Principles for Directors:  In establishing appropriate religious, ethical, or moral standards referenced in Article X, par. 4 of the Articles of Incorporation, each director may continue to use his or her business and religious judgment, even should the adoption of any religious, ethical, or moral standards result in a reduction of the profitability of the Corporation."

37.     Further, Article V, Section 10 of Sioux Chief's Bylaws states:

"Guiding Principles for Officers: In establishing appropriate religious, ethical, or moral standards referenced in Article X, par. 4 of the Articles of Incorporation, each officer may continue to use his or her business and religious judgment, even should the adoption of any religious, ethical, or moral standards result in a reduction of the profitability of the Corporation."

38.     Under the Ismerts' direction, Sioux Chief contributes to charitable, religious, and educational organizations, including those that advance spiritual, moral and ethical teachings consistent with Catholicism.  Sioux Chief particularly supports pro-life groups that uphold the Church's teachings concerning abortion.  Since 1999, Sioux Chief has donated over $2 million to

8

charitable causes; approximately 84% of Sioux Chief's charitable donations have been made to Catholic or other life-supporting organizations.

## II. SIOUX CHIEF'S HEALTH INSURANCE PLAN

39.     As part of fulfilling their organizational mission and Catholic beliefs and commitments, Plaintiffs provide generous health insurance for their employees.

40.     Sioux Chief has approximately 370 full-time employees at its Peculiar, Missouri location.

41.     Plaintiffs maintain a self-insured group plan for their employees, in which Sioux Chief acts as its own insurer.

42.     The plan year for Sioux Chief's self-insured plan begins on April 1 of each year, with the next plan year starting on April 1, 2013.

43.     Consistent with Plaintiffs' religious commitments, Sioux Chief's self-insured plan does not cover abortifacient drugs, contraception or sterilization; indeed, Sioux Chief has excluded elective sterilization, abortifacient drugs, or contraception from employee coverage for more than ten years.

44.     To implement the plan for the year beginning April 1, 2013, Plaintiffs must make insurance coverage decisions and logistical arrangements on or by March 1, 2013.

## III. THE PPACA AND DEFENDANTS' MANDATE THEREUNDER

45.     Under the PPACA, employers with over 50 full-time employees are required to provide a certain minimum level of health insurance to their employees.

46. Nearly all such plans must include "preventive services," which must be offered with no cost-sharing by the employee.

47. On February 10, 2012, the Department of Health and Human Services finalized a rule (previously referred to in this Complaint as the Mandate) that imposes a definition of preventive services to include all FDA-approved "contraceptive" drugs, surgical sterilization, and education and counseling for such services.

48. This final rule was adopted without giving due weight to the tens of thousands of public comments submitted to HHS in opposition to the Mandate.

49. In the category of "FDA-approved contraceptives" included in this Mandate are several drugs or devices that may cause the demise of an already-conceived but not-yet-implanted human embryo, such as "emergency contraception" or "Plan B" drugs (the so-called "morning after" pill).

50. The FDA approved in this same category a drug called "ella" (the so-called "week after" pill), which studies show can function to kill embryos even after they have implanted in the uterus, by a mechanism similar to the abortion drug RU-486.

51. The manufacturers of some such drugs, methods and devices in the category of "FDA-approved contraceptive methods" indicate that they can function to cause the demise of an early human embryo.

52. The Mandate also requires group health care plans to pay for the provision of counseling, education, and other information concerning contraception (including devices and drugs such as Plan B and ella that cause early abortions or harm to human embryos) and sterilization for all women beneficiaries who are capable of bearing children.

10

53.     The Mandate applies to the first health insurance plan-year beginning after August 1, 2012.

54.     An entity cannot escape the Mandate by self-insuring; Plaintiffs' plan is thus subject to the Mandate even though it is self-insured.

55.     Thus Plaintiffs are, absent relief from this Court, subject to the Mandate's requirement of coverage of the above-described items starting in Sioux Chief's April 1, 2013, plan.

56.     The Mandate makes little or no allowance for the religious freedom of entities and individuals, including Plaintiffs, who object to paying for or providing insurance coverage for such items.

57.     An entity cannot freely avoid the Mandate by simply refusing to provide health insurance to its employees, because the PPACA imposes monetary penalties on entities that would so refuse.

58.     The exact magnitude of these penalties may vary according to the complicated provisions of the PPACA, but the fine is approximately $2,000 per employee per year.

59.     PPACA also imposes monetary penalties if Sioux Chief were to continue to offer its self-insured plan but continued omitting abortifacients, contraceptives and sterilization.

60.     The exact magnitude of these penalties may vary according to the complicated provisions of the PPACA, but the fine is approximately $100 per day per employee, with minimum amounts applying in different circumstances.

61.     If Plaintiffs do not submit to the Mandate they also trigger a range of enforcement mechanisms that exist under ERISA, including but not limited to civil actions by the Secretary of Labor or by plan participants and beneficiaries, which would include but not be limited to relief

in the form of judicial orders mandating that Plaintiffs violate their sincerely held religious beliefs and provide coverage for items to which they religiously object.

62.     The Mandate applies not only to sponsors of group health plans like Plaintiffs, but also to issuers of insurance. Accordingly, Plaintiffs cannot avoid the Mandate by shopping for an insurance plan that accommodates their right of conscience, because the Administration has intentionally foreclosed that possibility.

63.     The Mandate offers the possibility of a narrow exemption to religious employers, but only if they meet all of the following requirements:

> 1)  "The inculcation of religious values is the purpose of the organization";
>
> 2)  "The organization primarily employs persons who share the religious tenets of the organization";
>
> 3)  "The organization serves primarily persons who share the religious tenets of the organization"; and
>
> 4)  The organization is a church, an integrated auxiliary of a church, a convention or association of churches, or is an exclusively religious activity of a religious order, under Internal Revenue Code 6033(a)(1) and (a)(3)(A).

64.     The Mandate imposes no constraint on the government's discretion to grant exemptions to some, all, or none of the organizations meeting the Mandate's definition of "religious employers."

65.     Plaintiffs are not "religious" enough under this definition in several respects, including but not limited to because they have purposes other than the "inculcation of religious values," they do not primarily hire or serve Catholics, and because Sioux Chief is not a church,

12

integrated auxiliary of a particular church, convention or association of a church, or the exclusively religious activities of a religious order.

66.     The Mandate fails to protect the statutory and constitutional conscience rights of religious Americans like Plaintiffs even though those rights were repeatedly raised in the public comments.

67.     The Mandate requires that Plaintiffs provide coverage for abortifacient methods, contraception, sterilization and education and counseling related to the same, against their conscience and in violation of their religious beliefs, in a manner that is contrary to law.

68.     The Mandate constitutes government-imposed coercion on Plaintiffs to change or violate their sincerely held religious beliefs.

69.     The Mandate exposes Plaintiffs to substantial fines for refusal to change or violate their religious beliefs.

70.     The Mandate will impose a burden on the Plaintiffs' employee recruitment and retention efforts by creating uncertainty as to whether or on what terms they will be able to offer health insurance beyond the Mandate's effect or will suffer penalties therefrom.

71.     The Mandate will place Plaintiffs at a competitive disadvantage in their efforts to recruit and retain employees.

72.     Plaintiffs have a sincere conscientious religious objection to providing coverage for abortifacients, contraception, sterilization and related education and counseling.

73.     The Mandate does not apply equally to all religious adherents or groups.

74.     PPACA and the Mandate are not generally applicable because they provide for numerous exemptions from their rules.

75.     For instance, the Mandate does not apply to members of a "recognized religious sect or division" that conscientiously objects to acceptance of public or private insurance funds. *See* 26 U.S.C. §§ 5000A(d)(2)(a)(i) and (ii).

76.     In addition, as described above, the Mandate exempts certain churches narrowly considered to be religious employers.

77.     Furthermore, the PPACA creates a system of individualized exemptions because under the PPACA's authorization the federal government has granted discretionary compliance waivers to a variety of businesses for purely secular reasons.

78.     The Mandate does not apply to employers with preexisting plans that are "grandfathered."

79.     However, a plan loses its "grandfathered" status if, compared to the plan in effect on March 23, 2010, the plan significantly raises deductibles, co-pays, co-insurance charges, or significantly lowers coverage, limits, or employer contributions. Sioux Chief's redesigned its plan, effective April 1, 2010, to increase many coverages, but also increased deductibles and reduced employer contributions as of April 1, 2010.

80.     For example, Sioux Chief's deductible increased on April 1, 2010, from $300 to $1,000, an increase of more than 15% plus medical inflation since March 23, 2010.

81.     As a result of the changes made in April 2010, Sioux Chief's plan is not grandfathered. *See, e.g.,* 26 C.F.R. §54.9815–1251T (g)(1), 29 C.F.R. §2590.715–1251, and 45 CFR §147.140 (all setting forth requirements to maintain grandfather status).

82.     The Mandate does not apply through the employer mandate to employers having fewer than fifty full-time employees.

83.     President Obama held a press conference on February 10, 2012, and later (through Defendants) issued an "Advanced Notice of Proposed Rulemaking" ("ANPRM") (77 Fed. Reg. 16501–08), on March 21, 2012, claiming to offer a "compromise" under which some religious non-profit organizations not meeting the above definition would still have to comply with the Mandate, but by means of the employer's insurer offering the employer's employees the same coverage for "free."

84.     This "compromise" is not helpful to Plaintiffs because, among other reasons, Sioux Chief is not a non-profit entity, and Sioux Chief's plan is self-insured.

85.     On February 10, 2012, a document was also issued from the Center for Consumer Information and Insurance Oversight (CCIIO), Centers for Medicare & Medicaid Services (CMS), of HHS, entitled "Guidance on the Temporary Enforcement Safe Harbor for Certain Employers, Group Health Plans and Group Health Insurance Issuers with Respect to the Requirement to Cover Contraceptive Services Without Cost Sharing Under Section 2713 of the Public Health Service Act, Section 715(a)(1) of the Employee Retirement Income Security Act, and Section 9815(a)(1) of the Internal Revenue Code."

86.     Under this "Guidance," an organization that truthfully declares "I certify that the organization is organized and operated as a non-profit entity; and that, at any point from February 10, 2012, onward, contraceptive coverage has not been provided by the plan, consistent with any applicable State law, because of the religious beliefs of the organization," and that provides a specified notice to plan participants, will not "be subject to any enforcement action by the Departments for failing to cover recommended contraceptive services without cost sharing in non-exempted, non-grandfathered group health plans established or maintained by an organization, including a group or association of employers within the meaning of section 3(5) of

ERISA, (and any group health insurance coverage provided in connection with such plans)," until "the first plan year that begins on or after August 1, 2013."

87.     The "Guidance" categorically disqualifies Plaintiffs from making use of this "extra year" because, among other reasons, Sioux Chief is not a non-profit entity.

88.     Therefore while the President's "compromise" and guidance purport to accommodate the religious beliefs of even more groups beyond the Mandate's initial exemption for churches, none of these measures will stop the Mandate from imposing its requirements on Plaintiffs' plan year beginning April 1, 2013.

89.     Unless relief issues from this Court, Plaintiffs are forced to take the Mandate into account now and no later than March 1, 2013, as it plans expenditures, including employee compensation and benefits packages, for the April 1, 2013, plan year and for the next several years. It will have to negotiate contracts for new and existing employees and these contracts will extend into the time frame when the Mandate begins to apply to its health insurance plans.

90.     The Mandate is having a profound and adverse effect on Plaintiffs and how they negotiate contracts and compensate their employees.

91.     The Mandate makes it difficult for Plaintiffs to attract quality employees because of uncertainty about health insurance benefits.

92.     Any alleged interest Defendants have in providing free contraception, abortifacients and sterilization without cost-sharing could be advanced through other, more narrowly tailored mechanisms that do not burden the religious beliefs of Plaintiffs and do not require them to provide or facilitate coverage of such items through their health plan.

93. Without injunctive and declaratory relief as requested herein, including preliminary injunctive relief issued before March 1, 2013, Plaintiffs are suffering and will continue to suffer irreparable harm.

94. Plaintiffs have no adequate remedy at law.

## FIRST CLAIM FOR RELIEF

### VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT 42 U.S.C. § 2000BB

95. Plaintiffs reallege all matters set forth in paragraphs 1-94 and incorporate them herein by reference.

96. Plaintiffs' sincerely held religious beliefs prohibit them from providing coverage for abortifacients, contraception, sterilization, and related education and counseling in their employee health plan.

97. When Plaintiffs comply with Catholic ethical and moral teachings on abortifacients, contraception, and sterilization and with their sincerely held religious beliefs, they exercise religion within the meaning of the Religious Freedom Restoration Act.

98. The Mandate imposes a substantial burden on Plaintiffs' religious exercise and coerces them to change or violate their sincerely held religious beliefs.

99. The Mandate chills Plaintiffs' religious exercise within the meaning of RFRA.

100. The Mandate exposes Plaintiffs to substantial fines and/or financial burdens for their religious exercise.

101. The Mandate exposes Plaintiffs to substantial competitive disadvantages because of uncertainties about their health insurance benefits caused by the Mandate.

17

102.    The Mandate furthers no compelling governmental interest and is not narrowly tailored to any compelling governmental interest.

103.    The Mandate is not the least restrictive means of furthering Defendants' stated interests.

104.    The Mandate violates RFRA.

WHEREFORE, the Plaintiffs pray for the relief set forth below.

## SECOND CLAIM FOR RELIEF

VIOLATION OF FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

105.    Plaintiffs reallege all matters set forth in paragraphs 1- 94 and incorporate them herein by reference.

106.    Plaintiffs' sincerely held religious beliefs prohibit them from providing coverage for abortifacients, contraception, sterilization, and related education and counseling in their employee health plan.

107.    When Plaintiffs comply with Catholic ethical and moral teachings on abortifacients, contraception, and sterilization and with their sincerely held religious beliefs, they exercise religion within the meaning of the Free Exercise Clause.

108.    The Mandate is not neutral and is not generally applicable.

109.    Defendants have created categorical exemptions and individualized exemptions to the Mandate.

110.    The Mandate furthers no compelling governmental interest.

Case 4:13-cv-00036-ODS   Document 1   Filed 01/14/13   Page 18 of 29

111.    The Mandate is not the least restrictive means of furthering Defendants' stated interests.

112.    The Mandate coerces Plaintiffs to change or violate their sincerely held religious beliefs.

113.    The Mandate chills Plaintiffs' religious exercise.

114.    The Mandate exposes Plaintiffs to substantial fines and/or financial burdens for their religious exercise.

115.    The Mandate exposes Plaintiffs to substantial competitive disadvantages because of uncertainties about its health insurance benefits caused by the Mandate.

116.    The Mandate imposes a substantial burden on Plaintiffs' religious exercise.

117.    The Mandate is not narrowly tailored to any compelling governmental interest.

118.    By design, Defendants framed the Mandate to apply to some religious Americans but not to others, resulting in discrimination among religions.

119.    Defendants have created exemptions to the Mandate for some religious believers but not others based on characteristics of their beliefs and their religious exercise.

120.    Defendants designed the Mandate, the religious exemption thereto, and the "compromise" and guidance allowances thereto, in a way that makes it impossible for Plaintiffs and other Americans holding similar religious beliefs to comply with those religious beliefs.

121.    Defendants promulgated both the Mandate and the religious exemption/allowances with the purpose and intent to suppress the religious exercise of Plaintiffs and others.

122.    The Mandate violates Plaintiffs' rights secured to them by the Free Exercise Clause of the First Amendment of the United States Constitution.

19

WHEREFORE, the Plaintiffs pray for the relief set forth below.

## THIRD CLAIM FOR RELIEF

VIOLATION OF THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

123.    Plaintiffs reallege all matters set forth in paragraphs 1- 94 and incorporate them herein by reference.

124.    The First Amendment's Establishment Clause prohibits the establishment of any religion and/or excessive government entanglement with religion.

125.    To determine whether religious persons (or associations of religious persons) like Plaintiffs are required to comply with the Mandate, are required to continue to comply with the Mandate, are eligible for an exemption or other accommodations, or continue to be eligible for the same, Defendants must examine the religious beliefs and doctrinal teachings of persons or entities like Plaintiffs.

126.    Obtaining sufficient information for the Defendants to analyze the content of Plaintiffs' sincerely held religious beliefs requires ongoing, comprehensive government surveillance that impermissibly entangles Defendants with religion.

127.    The Mandate discriminates among religions and among denominations, favoring some over others, and exhibits hostility to religious beliefs.

128.    The Mandate adopts a particular theological view of what is acceptable moral complicity in provision of abortifacient, contraceptive and sterilization coverage and imposes it upon all religionists who must either conform their consciences or suffer penalty.

20

129.     The Mandate violates Plaintiffs' rights secured to them by the Establishment Clause of the First Amendment of the United States Constitution.

WHEREFORE, the Plaintiffs pray for the relief set forth below.


## FOURTH CLAIM FOR RELIEF

VIOLATION OF THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

130.     Plaintiffs reallege all matters set forth in paragraphs 1-94 and incorporate them herein by reference.

131.     Defendants' requirement of provision of insurance coverage for education and counseling regarding contraception and abortion-causing drugs forces Plaintiffs to speak in a manner contrary to their religious beliefs.

132.     Defendants have no narrowly tailored compelling interest to justify this compelled speech.

133.     The Mandate violates Plaintiffs' rights secured to them by the Free Speech Clause of the First Amendment of the United States Constitution.

WHEREFORE, the Plaintiffs pray for the relief set forth below.

Case 4:13-cv-00036-ODS   Document 1   Filed 01/14/13   Page 21 of 29

# FIFTH CLAIM FOR RELIEF

VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES

CONSTITUTION

134. Plaintiffs reallege all matters set forth in paragraphs 1- 94 and incorporate them herein by reference.

135. Because the Mandate sweepingly infringes upon religious exercise and speech rights that are constitutionally protected, it is unconstitutionally vague and overbroad in violation of the due process rights of Plaintiffs and other parties not before the Court.

136. Persons of common intelligence must necessarily guess at the meaning, scope, and application of the Mandate and its exemptions.

137. This Mandate lends itself to discriminatory enforcement by government officials in an arbitrary and capricious manner.

138. The Mandate vests Defendants with unbridled discretion in deciding whether to allow exemptions to some, all, or no organizations meeting whatever definition of "religious employers" it decides to craft.

139. This Mandate is an unconstitutional violation of Plaintiffs' due process rights under the Fifth Amendment to the United States Constitution.

WHEREFORE, the Plaintiffs pray for the relief set forth below.

## SIXTH CLAIM FOR RELIEF

### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

140.     Plaintiffs reallege all matters set forth in paragraphs 1- 94 and incorporate them

herein by reference.

141.     Because they did not give proper notice and an opportunity for public comment,

Defendants did not take into account the full implications of the regulations by completing a

meaningful consideration of the relevant matter presented.

142.     Defendants did not consider or respond to the voluminous comments they

received in opposition to the interim final rule.

143.     Therefore, Defendants have taken agency action not in accordance with

procedures required by law, and Plaintiffs are entitled to relief pursuant to 5 U.S.C. § 706(2)(D).

144.     In promulgating the Mandate, Defendants failed to consider the constitutional and

statutory implications of the Mandate on Plaintiffs and similar persons.

145.     Defendants' explanation (and lack thereof) for its decision not to exempt

Plaintiffs and similar religious organizations from the Mandate runs counter to the evidence

submitted by religious Americans during the comment period.

146.     Thus, Defendants' issuance of the Mandate was arbitrary and capricious within

the meaning of 5 U.S.C. § 706(2)(A) because the Mandate fails to consider the full extent of its

implications and it does not take into consideration the evidence against it.

147.     As set forth above, the Mandate violates RFRA and the First and Fifth

Amendments.

148.     The Mandate is also contrary to the provision of the PPACA which states that

"nothing in this title" — *i.e.*, title I of the Act, which includes the provision dealing with

"preventive services" — "shall be construed to require a qualified health plan to provide coverage of [abortion] services . . . as part of its essential health benefits for any plan year." Section 1303(b)(1)(A). Some drugs included as "FDA-approved contraceptives" under the Mandate cause abortions by causing the demise of human embryos before and/or after implantation.

149.    The Mandate is also contrary to the provisions of the Weldon Amendment of the Consolidated Security, Disaster Assistance, and Continuing Appropriations Act of 2009, Public Law 110 329, Div. A, Sec. 101, 122 Stat. 3574, 3575 (Sept. 30, 2008), which provides that "[n]one of the funds made available in this Act [making appropriations for Defendants Department of Labor and Health and Human Services] may be made available to a Federal agency or program . . . if such agency, program, or government subjects any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions."

150.    The Mandate also violates the provisions of the Church Amendment, 42 U.S.C. § 300a-7(d), which provides that "[n]o individual shall be required to perform or assist in the performance of any part of a health service program or research activity funded in whole or in part under a program administered by the Secretary of Health and Human Services if his performance or assistance in the performance of such part of such program or activity would be contrary to his religious beliefs or moral convictions."

151.    The Mandate is contrary to existing law and is in violation of the APA under 5 U.S.C. § 706(2)(A) – (F).

WHEREFORE, the Plaintiffs pray for the relief set forth below.

# PRAYER

WHEREFORE, Plaintiffs respectfully request the following relief:

A. That this Court enter a judgment declaring the Mandate and its application to Plaintiffs and others similarly situated but not before the Court to be a violation of their rights protected by RFRA, the Free Exercise, Establishment, and Free Speech Clauses of the First Amendment to the United States Constitution, the Due Process Clause of the Fifth Amendment to the United States Constitution, and/or the Administrative Procedure Act, and therefore invalid in any way applicable to them;

B. That this Court enter a preliminary and a permanent injunction prohibiting Defendants from applying the Mandate to Plaintiffs and others similarly situated but not before the Court in a way that substantially burdens the religious belief of Plaintiffs or any person in violation of RFRA and the Constitution, and prohibiting Defendants from continuing to illegally discriminate against Plaintiffs and others not before the Court by requiring them to provide health insurance coverage for abortifacients, contraception, sterilization and related education and counseling to their employees;

C. That this Court award Plaintiffs court costs and reasonable attorney's fees, as provided by the Equal Access to Justice Act and RFRA (as provided in 42 U.S.C. § 1988);

D. That this Court grant such other and further relief as to which the Plaintiffs may be entitled.

Respectfully submitted,

s/ Jonathan R. Whitehead

LAW OFFICES OF JONATHAN R WHITEHEAD
LLC
Jonathan R. Whitehead Mo. 56848
229 S.E. Douglas St., Ste. 210
Lee's Summit, Mo 64063
816.398.8305 - Phone
816.278.9131 – Fax

and

ALLIANCE DEFENDING FREEDOM
Kevin H. Theriot, Esq., Mo. 55733
ktheriot@telladf.org
15192 Rosewood
Leawood, KS 66224
(913) 685-8000
(913) 685-8001 (facsimile)

ATTORNEYS FOR PLAINTIFFS

January 14, 2013

## **VERIFICATION**

I declare under penalty of perjury that the foregoing is true and correct. Executed on January ___, 2013.

_____

JOSEPH P. ISMERT

## **VERIFICATION**

I declare under penalty of perjury that the foregoing is true and correct. Executed on January /4 2013.

JOSEPH N. ISMERT

## <u>VERIFICATION</u>

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 14, 2013.

DOMINIC P. ISMERT